AB/2015R00669

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. |
| v. | : | Criminal No. 22- |
| MICHAEL DROBISH | : | 18 U.S.C. § 1349 |

## INFORMATION

The defendant having waived in open court prosecution by Indictment, the United States Attorney for the District of New Jersey charges:

1. At all times relevant to this Information:

### Background

a. Defendant MICHAEL DROBISH ("defendant DROBISH") was a resident of New Jersey and the owner of "Marketing Company-1," a company based in New Jersey that marketed various compounded drugs, including pain creams, scar creams, wound creams, and metabolic supplements, in the state of New Jersey and elsewhere.

b. "Compounding" was a practice in which a pharmacist or physician combined, mixed, or altered ingredients of a drug to create a medication tailored to an individual patient's needs. Pharmacies engaged in the practice of compounding were referred to as "compounding pharmacies."

c. The Food and Drug Administration ("FDA") did not approve compounded drugs and thus did not verify the safety, potency, effectiveness, or manufacturing quality of compounded drugs.

d. Generally, a physician prescribed compounded drugs when an FDA-approved drug did not meet the health needs of a particular patient. For example, if a patient was allergic to a specific ingredient in an FDA-approved medication, such as a dye or preservative, a compounded drug could be prepared excluding the substance that triggered the allergic reaction. Compounded drugs also could be prescribed when a patient could not consume a medication by traditional means, such as an elderly patient or child who could not swallow an FDA-approved pill and who needed the drug in a liquid form that was not otherwise available.

e. Certain health insurance plans (the "Paying Plans") paid substantially higher reimbursements for various compounded drugs than for FDA-approved equivalent drugs. Each of the Paying Plans constituted a "health care benefit program" that affected commerce as defined in 18 U.S.C. § 24(b).

## The Conspiracy

2. From in or about April 2014 through in or around January 2017, in the District of New Jersey and elsewhere, defendant

**MICHAEL DROBISH**

did knowingly and intentionally conspire and agree with others to knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud health care benefit programs, as defined by 18 U.S.C. § 24(b), and to obtain, by means of false and fraudulent pretenses, representations, and promises, any of the money and property owned by, and under the custody and control of, health care benefit programs, in connection with the delivery of or payment for health care

benefits, items, and services, contrary to Title 18, United States Code, Section 1347.

## Goal of the Conspiracy

3. The goal of the conspiracy was for defendant DROBISH and others to unlawfully enrich themselves by causing the submission of false and fraudulent claims to the Paying Plans for medically unnecessary compounded drugs, and by obtaining a portion of the money that the Paying Plans paid for those compounded drugs.

## Manner and Means of the Conspiracy

4. It was part of the conspiracy that:

a. From in or about April 2014 to in or about January 2017, defendant DROBISH caused "sales representatives" for Marketing Company-1 to (1) obtain medically unnecessary compounded drugs for themselves or their family members through their respective Paying Plans, and (2) recruit others with Paying Plans to obtain medically unnecessary compounded drugs.

b. Through Marketing Company-1, defendant DROBISH and his co-conspirators caused prescribing physicians in New Jersey and elsewhere to write prescriptions for: (1) individuals with whom they did not have any interaction for purposes of determining that a prescription for a compounded drug was medically necessary, or (2) individuals for whom they deliberately conducted a cursory examination that was insufficient to legitimately deem a compounded drug medically necessary.

c. Defendant DROBISH and others ensured that the

compounded prescriptions were directed to certain compounding pharmacies (the "Compounding Pharmacies") with which they conspired. In exchange for the prescriptions that Marketing Company-1 directed to them, the Compounding Pharmacies paid Marketing Company-1 a percentage of the reimbursement payment for each compounded drug that Marketing Company-1 caused to be billed to a Paying Plan.

  d. As the owner of Marketing Company-1, defendant DROBISH kept a portion of the payment and provided a "commission" payment to the sales representative that generated the business.

  e. Defendant DROBISH and others also provided payments to the patients that he and others caused to receive medically unnecessary compounded medications as compensation for their participation in the scheme.

  f. Through these methods, defendant DROBISH caused the Paying Plans to be billed for medically unnecessary compounded medications.

  g. As a result of defendant DROBISH's participation in the scheme to bill for medically unnecessary compounded drugs, defendant DROBISH caused a loss to the Paying Plans of over $6,000,000.

In violation of Title 18, United States Code, Section 1349.

## FORFEITURE ALLEGATION

1. Upon conviction of conspiracy to commit health care fraud, contrary to 18 U.S.C. § 1347, in violation of 18 U.S.C. § 1349, as alleged in this Information, defendant DROBISH shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), all property, real or personal, obtained by defendant DROBISH that constitutes or is derived, directly and indirectly, from gross proceeds traceable to the commission of such offense, the value of which totaled $532,649.64.

### Substitute Assets Provision

2. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

   (a) cannot be located upon the exercise of due diligence;

   (b) has been transferred or sold to, or deposited with, a third person;

   (c) has been placed beyond the jurisdiction of the Court;

   (d) has been substantially diminished in value; or

   (e) has been commingled with other property which cannot be subdivided without difficulty;

the United States shall be entitled to forfeiture of substitute property, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b).

*/s/ Philip R. Sellinger*
PHILIP R. SELLINGER
United States Attorney